UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

AMY CHIN,

                        Plaintiff,

        - against -

NEW YORK CITY HOUSING AUTHORITY,

                        Defendant.

_____

06 CV 1437 (RJH) (GWG)

LOCAL RULE 56.1 STATEMENT
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56.1 of the Local Rules of this Court, defendant New York City

Housing Authority ("NYCHA" or "Housing Authority"), as the moving party on this motion for summary

judgment pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, submits the following

statement of material facts as to which there are no genuine issues to be tried.

**Commencement of Plaintiff's Employment at NYCHA**
**and Her Appointment to Managerial Status**

1.      Plaintiff commenced her employment with NYCHA on December 21, 1981 with her

provisional appointment to the Civil Service title of Assistant Accountant in the Design

Department. (Declaration of Counsel in Support of Defendant's Motion for Summary

Judgment ["Counsel Declar."], Exhibit A [Notification of Appointment; Human

Resources Department Record Card for Amy Chin].)

2.      Effective May 17, 1993, plaintiff was provisionally appointed to the civil service title of

Administrative Accountant at which time she became an M-1 level managerial employee

in the Disbursements Division of the Financial Operations Department, and at

approximately that time assumed the office title of Supervisor of Reports and Accounts.

(Counsel Declar., Exhibit A; Exhibit B [December 8, 1993 Memo: Personnel Action in

the Financial Operations Department; Executive Department Memo, dated June 5, 1995].)

**Plaintiff's Filing with NYCHA's Department of Equal Opportunity in March 2001**

3.       On or about March 2, 2001, plaintiff filed a complaint against Financial Operations Department Assistant Director Ahmad Thabet with NYCHA's Department of Equal Opportunity (DEO) asserting that Mr. Thabet had discriminated against her because of her race and gender. (Declaration of Ahmad Thabet in Support of Defendant's Motion for Summary Judgment [Thabet Declar.], ¶ 4.)

4.       On or about July 25, 2001, DEO informed plaintiff that, "[a]fter an extensive investigation, it was determined that the evidence did not support the allegations made by you." (Counsel Declar., Exhibit C [DEO Memorandum, dated July 25, 2001 to plaintiff].)

5.       Ahmad Thabet received notice of DEO's decision in or about the end of July 2001. (Thabet Declar., ¶ 6 and Exhibit A thereto [DEO Memorandum, dated July 25, 2001 to Thabet].)

**Plaintiff's Participation in Oracle Training**

6.       Mr. Thabet's initial involvement with Oracle, the financial management software that NYCHA officially implemented in or about September 2003, began in or about late-2002. This was the first phase of the installation of Oracle at NYCHA, which concerned, generally, determining what NYCHA would use Oracle for, how it would use it, how Oracle would be set up and how NYCHA would migrate from FMS to Oracle. Plaintiff was presented with the opportunity to participate in this early phase but she declined indicating to Mr. Thabet that two of her staff -- Waiman Leong and Linda Zhang -- were available for this matter. Subsequently, during summer 2003, plaintiff attended

Oracle user training sessions at NYCHA in preparation for NYCHA's official implementation of Oracle in September. Mr. Thabet did not have any input regarding who would or would not receive such user training. (Thabet Declar., ¶¶ 23, 26; Counsel Declar., Exhibit I [Oracle training sign-in sheets for period July 7, 2003 through August 29, 2003].)

**Promotion of Ahmad Thabet**

7.  In or about mid-August 2003, Ahmad Thabet was promoted from the position of Assistant Director of the Control Section of the Disbursements Division of the Financial Operations Department to the position of Deputy Director of the Disbursements Division of the Financial Operations Department, replacing the former Deputy Director who had retired in November 2002. (Thabet Declar., ¶¶ 8, 9; Counsel Declar., Exhibit D [Human Resources Department Record Card for Ahmad Thabet; August 20, 2003 e-mail - Upgrade and Salary Adjustment for Ahmad Thabet; Human Resources Department Employee Information for 26th Pay Period, 1999 for Ahmad Thabet ].)

8.  No position or budget line was created for Mr. Thabet. After this promotion, Mr. Thabet occupied the same budget line as before and continued to fulfill the duties of his former Assistant Director position inasmuch as that position was not going to be backfilled. (Thabet Declar., ¶¶ 8, 12; Declaration of Felix Lam in Support of Defendant's Motion for Summary Judgment [Lam Declar.], ¶ 4.)

9.  On or about September 15, 2003, Michael Pagani, then Director of the Financial Operations Department issued an announcement of Mr. Thabet's promotion. (Thabet Declar., ¶ 9 and Exhibit B thereto.)

10. Mr. Pagani retired from NYCHA shortly thereafter. (Thabet Declar., ¶ 10.)

## Plaintiff's Requests For Promotion to Assistant Director of the Control Section

11.  In December 2003, plaintiff verbally requested a promotion to the position of Assistant Director of the Control Section. (Counsel Declar., Exhibit K [Transcript of Plaintiff's Deposition ("Pl. Tr.") at 28, 45]; Thabet Declar., ¶ 11.)

12.  On March 2, 2004, plaintiff made a written request to Mr. Thabet for promotion to the position of Assistant Director of the Control Section. (Counsel Declar., Exhibit K [Pl. Tr. at 28]; Thabet Declar., ¶ 11 and Exhibit C thereto.)

13.  Mr. Thabet responded to plaintiff's requests by indicating to her that there was no open position, for which funds were available, to which anyone could be promoted and that it was not in his hands to promote someone to that position in any event. Even if there had been an open, funded position, Mr. Thabet would have only been able to recommend someone for that position. (Thabet Declar., ¶ 12.)

14.  Mr. Thabet did not seek to fill this Assistant Director position; he did not interview or consider anyone for the Assistant Director position, nor did he take any other steps in the direction of filling that position because no position existed. (Thabet Declar., ¶ 12; Lam Declar., ¶ 4.)

## Transfer of Bernard Pigott From the Budget Department to the Financial Operations Department

15.  Following Mr. Pagani's retirement, Kirit Panchamia, then First Deputy Director in the Budget Department, was appointed interim Director of the Financial Operations Department by Felix Lam, NYCHA's Deputy General Manager for Finance and Chief Financial Officer in January 2004. (Thabet Declar., ¶ 10; Declaration of Kirit Panchamia in Support of Defendant's Motion for Summary Judgment [Panchamia Declar.], ¶ 1; Lam Declar., ¶ 5.)

-4-

16.    In April 2004, Kirit Panchamia transferred Bernard Pigott, then an M-2 level Assistant Director in the Budget Department, to the Disbursements Division of the Financial Operations Department. (Panchamia Declar., ¶ 4.)

17.    At the time that Mr. Panchamia transferred Mr. Pigott to the Disbursements Division in the Financial Operations Department, he did not know that plaintiff wanted to be, or had made any requests to be, promoted to the position of Assistant Director of the Control Section; nor was he aware at that time that plaintiff had filed a internal complaint of discrimination against Mr. Thabet. (Panchamia Declar., ¶ 5; Lam Declar., ¶ 7.)

18.    Mr. Pigott had been appointed Assistant Director (an M-2 level manager) in the Operating Budget/Financial Analysis Division of the Budget Department effective March 15, 2001 and was appointed Assistant Director (an M-2 level manager) in the Other Than Personal Services & Special Projects Division of the Budget Department effective July 15, 2002. (Counsel Declar., Exhibit E [Human Resources Department Record Card for Bernard Pigott; Human Resources Department Memorandum, dated March 20, 2001, regarding the managerial promotion for Pigott in the Operating Budget/Financial Analysis Division of the Budget Department; Managerial Vacancy Posting # 8368, dated April 15, 2002, for Assistant Director in the Other Than Personal Services & Special Projects Division of the Budget Department, Interview Disposition Memorandum; PD2 Form for Managerial Vacancy Posting # 8368]; Panchamia Declar., ¶ 4.)

19.    Mr. Pigott arrived in the Financial Operations Department with his M-2 level Budget Department Assistant Director title and his budget line; Mr. Panchamia was not filling any vacancy in the Financial Operations Department, including the Disbursements Division thereof, with his transfer of Mr. Pigott. (Panchamia Declar., ¶ 4; Thabet

Declar., ¶ 13; Lam Declar., ¶ 6.)

20.     Upon the administrative transfer in April 2004, Mr. Pigott received the title of Assistant

        Director of the Control Section in the Disbursements Division of the Financial Operations

        Department, also an M-2 level managerial position. (Panchamia Declar., ¶ 4; Thabet

        Declar., ¶ 14.)

21.     Mr. Pigott did not receive a raise because of this transfer. (Panchamia Declar., ¶ 4; *see*

        Counsel Declar., Exhibit E.)

22.     Mr. Panchamia transferred Mr. Pigott because he believed that Mr. Pigott could provide

        valuable assistance (including additional supervisory help) to Mr. Thabet and the

        Disbursements Division with regard to the accounts payable process, based upon Mr.

        Panchamia's assessments of the work then being performed by the Disbursements

        Division of the Financial Operations Department, and his knowledge of Mr. Pigott's

        experience in the Budget Department. Mr. Panchamia was also aware that Mr. Pigott

        had had a personality clash with his supervisor at the time over a ministerial matter and

        felt that transferring Mr. Pigott would also be in his and the Budget Department's best

        interests. (Panchamia Declar., ¶ 4.)

23.     In or about May 2005, Mr. Thabet announced to his staff that Mr. Pigott would be

        functioning as the Assistant Director of the Control Section in the Disbursements

        Division. Mr. Thabet did not appoint Mr. Pigott to this position. (Thabet Declar., ¶ 14.)

24.     Jeffrey Pagelson was appointed NYCHA's Controller in July 2004, ending Mr.

        Panchamia's tenure as interim Director of the Financial Operations Department.

        (Declaration of Jeffrey Pagelson in Support of Defendant's Motion for Summary

        Judgment [Pagelson Declar.], ¶ 1; Panchamia Declar., ¶ 1; Lam Declar., ¶ 5.)

25. In early October 2004, plaintiff complained to Mr. Thabet about Mr. Pigott's role as Assistant Director of the Control Section. Plaintiff did not state to Mr. Thabet that Mr. Pigott serving in this role was evidence of Mr. Thabet's discriminatory treatment of her. Rather, plaintiff said, in sum or substance, that Mr. Pigott was an "outsider" and that she deserved that position instead of Mr. Pigott. (Thabet Declar., ¶ 20.)

**Proposed Transfer of Plaintiff to the Petty Cash and Employee Expenses Unit**

26. On October 14, 2004, Mr. Thabet, after consulting with Mr. Pagelson, directed plaintiff to assume managerial responsibility for the Petty Cash and Employee Expenses Unit within the Purchase Order Section of the Disbursements Division. (Thabet Declar., ¶ 21; Pagelson Declar., ¶ 7.)

27. Another manager in the Purchase Order Section of the Disbursements Division was needed to relieve Parmanand Ramlochan, the existing supervisor of that Section, of certain responsibilities due to the great amount of work he was required to do. Mr. Ramlochan was to retain responsibility over the Small Procurement Contracts and Purchase Orders Unit. (Thabet Declar., ¶ 21; Pagelson Declar., ¶ 7.)

28. The Petty Cash and Employee Expenses Unit is responsible for the processing and monitoring of petty cash expenditures made by the Accounting and Fiscal Services Department and by hundreds of NYCHA field locations, the replenishment of petty cash funds maintained by NYCHA field locations and requests for the reimbursement of employee expenses not included with the ambit of petty cash. Mr. Thabet believed that plaintiff was capable of assuming this important responsibility and that she would provide the proper oversight to ensure the integrity of this payment and reimbursement system. Further, Mr. Thabet believed that plaintiff was available for this reassignment because

she had highly capable staff under her in the Analysis and Internal Control Unit whose

work was, and would continue to be, supervised by an Assistant Director. (Thabet

Declar., ¶ 21; Pagelson Declar., ¶ 7.)

29.    Plaintiff wrote an e-mail on October 14 to Lorrayne Glover, a secretary to a NYCHA

Board Member, informing her that Mr. Thabet wanted to put plaintiff in charge of the

Petty Cash Unit and seeking Ms. Glover's help. According to plaintiff, Ms. Glover told

plaintiff to speak to the Controller. (Counsel Declar., Exhibit F [Plaintiff's October 14,

2004 e-mail to Lorrayne Glover; Counsel Declar, Exhibit K [Pl. Tr. at 78-79].)

30.    Plaintiff never assumed managerial responsibility for the Petty Cash and Employee

Expenses Unit, however, because she refused to go and Mr. Thabet and Mr. Pagelson

decided not to proceed with the reassignment. Ms. Chin remained the Manager of the

Analysis and Internal Control Unit. (Thabet Declar., ¶ 21; Pagelson Declar., ¶ 7 .)

31.    On October 25, 2004, sent an e-mail to Mr. Pagelson thanking him for "the prevention of

the unfair transfer" to the Petty Cash Unit and "hop[ing that he] will consider [her] for an

upgrade in Analysis and Control Section, for this is the field I have been devoted to and

focused on." (Pagelson Declar., ¶ 8 and Exhibit A thereto; Counsel Declar, Exhibit K [Pl.

Tr. at pp 87-88].)

**Offer to Transfer Plaintiff to Treasury Division**

32.    In late November 2004, Mr. Pagelson and Aaron Mittelman, the Deputy Director of the

Treasury Division, presented plaintiff with the opportunity to help out the Department by

moving to the Treasury Division to create a control unit within the Treasury Division, akin

to the control unit she had been managing in the Control Section in the Disbursements

Division. (Pagelson Declar., ¶ 9.)

33.    Mr. Pagelson believed that plaintiff's transfer to the Treasury Division would be a good career move for her by providing a path for her future advancement in the Department, that she was capable of establishing a control unit in the Treasury Division, and that she would relish new challenges. Mr. Pagelson also knew that plaintiff was not happy where she was. (Pagelson Declar., ¶ 9 and Exhibit B thereto.)

34.    Plaintiff rejected the offer to transfer to the Treasury Division, preferring to stay where she was in the Analysis and Control Unit and seeking to be promoted in that area. (Pagelson Declar., ¶ 9 and Exhibit B thereto.)

**Plaintiff's Temporary Three-Day Assignment to Assist on a Capital Projects Division Project**

35.    On or about August 3, 2005, after discussion with the Controller, Mr. Thabet assigned plaintiff and Bharat Shah, a staff member in the Accounts Payable Division, to assist the Capital Projects Administration Unit (CPAU) of NYCHA's Capital Projects Department in a project arising out of the conversion and transfer of data pertaining to construction project contracts into Oracle, the financial management software officially implemented at NYCHA in or about September 2003, from NYCHA's previous financial management software, known as the Financial Management System (FMS). This project was headed by Simona Nicu, then the Assistant to the Deputy General Manager (DGM) for Capital Projects, which is the NYCHA department that is responsible for planning and implementing all capital construction projects undertaken by NYCHA and which reports directly to the DGM for Capital Projects. The manner in which financial data regarding individual construction projects had to be entered in Oracle had caused problems in Oracle; in part, balances remaining on construction projects were not being reflected accurately. To remedy this problem, certain data needed to be corrected in Oracle. This task of data correction required, among other things, familiarity with the contract process

and of FMS; knowledge of and access to the Accounts Payable module in Oracle; and

knowledge of and specialized access to a component of Oracle used only by the Capital

Projects Division (called the Purchasing module), regarding which staff needed to be

trained. (Thabet Declar., ¶ 23; Pagelson Declar., ¶ 10; Declaration of Simona Nicu in

Support of Defendant's Motion for Summary Judgment [Nicu Declar.], ¶¶ 3 and 5.)

36.    Mr. Thabet assigned plaintiff to assist with the CPAU project, first, because one of her

colleagues whom he had initially assigned to help (Ross McDonald) was on vacation and,

second, because he believed that she possessed the requisite degree of responsibility and

had sufficient knowledge about contracts, FMS and Oracle to be useful. Plaintiff made

herself available for this temporary assignment; her assignment on this project did not

work out; and her involvement in the project was over by August 5. She was replaced by

Mr. McDonald upon his return from vacation. (Thabet Declar., ¶ 24; Pagelson Declar., ¶

10; Nicu Declar., ¶ 6.)

37.    Plaintiff provided Mr. Pagelson with a report of her view of this project and her

experiences on August 3, 4 and 5. As a result of Mr. Pagelson's receipt of plaintiff's

report, he sought further information and was thereafter provided with a summary of the

project and of plaintiff's role in it by Simona Nicu. (Pagelson Declar., ¶ 10 and Exhibit C

thereto; Nicu Declar., ¶ 6 and Exhibit A thereto.)

## Removal of FOIL Work in August 2005

38.    In or about the time that Mr. Thabet assigned plaintiff to assist in the CPAU project, Mr.

Thabet returned to Shameeka Samuels, a Principal Administrative Associate I in the

Accounts Payable Division and the secretary to Assistant Director Sylvester Maloney,

the function of responding to FOIL requests presented to the Accounts Payable Division

in the Accounting and Fiscal Services Department. Ms. Samuels had performed this

function several years before, up until approximately early 2004 when the function was given to plaintiff. This work essentially consisted of gathering documents such as invoices and records of payment, including checks, from various sources (the documents gathered and the sources from which the documents could be obtained differed depending upon the specifics of the FOIL request), making copies of the documents, assembling them for review by a supervisor and forwarding the documents to the Law Department. (Thabet Declar., ¶ 25.)

39.     This work was taken from plaintiff and given to Ms. Samuels because Mr. Thabet believed that the work essentially entails clerical functions, because Ms. Samuels had previously performed this work, Ms. Samuels needed additional duties, and because Mr. Thabet wanted to relieve plaintiff of this lower-level work so that she could concentrate on her managerial functions. (Thabet Declar., ¶ 25; Pagelson Declar., ¶ 12.)

40.     On or about August 30, 2005, plaintiff sent an e-mail to Mr. Pagelson expressing her belief that Mr. Thabet had retaliated against her. This e-mail did not state the basis for the alleged retaliation, nor did it allege or describe discrimination of any sort, let alone employment discrimination based on race. (Pagelson Declar., ¶ 11 and Exhibit D thereto.)

**Plaintiff's Transfer in November 2005**

41.     On or about November 9, 2005, Mr. Pagelson first informed plaintiff, in the presence of a representative of NYCHA's Human Resources Department, that she was being transferred out of the Accounting and Fiscal Services Department and being sent to Operations, a different division of NYCHA. At that time, Mr. Pagelson did not know the specific field location within Operations to which plaintiff would be assigned. On November 10, 2005, Mr. Pagelson's administrative assistant informed plaintiff that the effective date of her transfer had been changed to November 28, 2005. On November

-11-

21, 2005, upon learning the location to which plaintiff had been assigned, Mr. Pagelson notified plaintiff that she was to report to the Manhattan Management Office, located at 1980 Lexington Avenue, on November 28, 2005. (Pagelson Declar., ¶ 13 and Exhibit E thereto.)

42.    Mr. Pagelson had decided as early as the end of 2004/beginning of 2005 that plaintiff was a candidate for transfer out of the Accounting and Fiscal Services Department, because by that point plaintiff had twice demonstrated (in October 2004 and in December 2004) little interest in taking on new challenges to help the Department.  (Pagelson Declar., ¶ 6.)

43.    In addition to plaintiff, two other managerial employees and nine non-managerial employees, all from the Accounts Payable Division, were transferred out of the Accounting and Fiscal Services Department at the same time. Mr. Pagelson selected the staff for transfer out of the Accounting and Fiscal Services Department. His decision to select these individuals was based on his assessment of the needs of his Department. These employees were made available to Robert Podmore, the Deputy General Manager for Operations. Mr. Pagelson did not make the decisions regarding the location to which any of the affected staff would be assigned. The decisions regarding the specific field location to which the transferred staff would be assigned was made by Mr. Podmore. (Pagelson Declar., ¶¶ 3, 5, 14 and Exhibit E thereto; Declaration of Robert Podmore in Support of Defendant's Motion for Summary Judgment, ¶¶ 3-6.)

44.    Plaintiff was transferred out of the Accounting and Fiscal Services Department because Mr. Pagelson believed that plaintiff was someone whom he could transfer out of the Department without incurring a negative effect. Mr. Pagelson perceived plaintiff as not possessing good leadership skills. She was not willing to take on different challenges, and

Mr. Pagelson viewed her as resistant to change. Plaintiff preferred to do lower-level work, like compiling information to respond to requests pursuant to New York's Freedom of Information Law, for which Mr. Pagelson did not need a manager. Furthermore, two of her staff, Waiman Leong and Linda Zhang, were very capably handling the tasks undertaken by her unit on a daily basis, and, as there was already an Assistant Director supervising that staff, Mr. Pagelson did not need another manager in that Section. (Pagelson Declar., ¶¶ 6, 12, 16.)

45.     Mr. Pagelson also transferred two other managerial staff at the same time that he transferred plaintiff: Eugenia Alexander and Rasul Modan. Ms. Alexander (Black, African-American) was an Administrative Accountant serving as an M-2 level Assistant Director of the Purchase Order Section of the Accounts Payable Division; Mr. Pagelson notified her on November 21, 2005 that she was being transferred to the Brooklyn Borough Management Office of Operations. Mr. Modan (Asian-Indian descent) was an Administrative Accountant serving as an M-1 level Manager of the Document and Vendor Assistance Units in the Control Section of the Accounts Payable Division; Mr. Pagelson notified him on November 21, 2005 that he was being transferred to the Bronx Borough Management Office of Operations. (Pagelson Declar., ¶ 14 and Exhibit F thereto.)

46.     Mr. Pagelson selected Ms. Alexander for transfer essentially because he had decided to combine her Section with the Contracts Section headed by Sylvester Maloney (Black, African-American), an M-2 level Assistant Director, and to have that newly-formed group headed by Mr. Maloney because he possessed greater knowledge of the most complex transactions with which the Department was involved. Mr. Pagelson selected Mr. Modan for transfer because he believed that Mr. Modan was not an effective

-13-

manager and was not the person who could institute improvement in the Vendor

Assistance Unit. Mario Calandruccio, an M-1 level manager in the Contracts Section

under Mr. Maloney, was not transferred because he was directly involved in an area with

a great deal of activity; he possessed an in-depth knowledge of NYCHA's contracts; he

had acquired extensive knowledge of Oracle as a result of his participation in the

implementation of Oracle; and he had developed a good working relationship with

NYCHA's other departments, particularly the Capital Projects Department, which has

the greatest number of contracts with outside vendors. (Pagelson Declar., ¶ 15.)

47.   Plaintiff was also notified of her reassignment and new reporting location by the Human

Resources Department by letter dated November 23, 2005. (Counsel Declar., Exhibit G

[November 23, 2005 letter from Director of Human Resources Department to plaintiff].)

48.   Plaintiff reported to her new work location on November 28, 2005. Her initial supervisor

was Dario Torres. Her present supervisor is John Aber; she works in the Business

Services Unit. (Counsel Declar., Exhibit H [Manhattan Management Department

Memorandum "Employees Returning to Work," dated March 20, 2006; Exhibit K [Pl. Tr.

pp 15-16]; Exhibit L [Transcript of Deposition of John Aber, at 14, 27, 32-33].)

**Other Alleged Acts of Retaliation**

49.   Mr. Thabet assigned the extent of a staff member's access in Oracle based upon that

staff member's job duties. Plaintiff's limited access to Oracle was based upon the level

required to perform her job duties and her proficiency with Oracle. Plaintiff's level of

access was due to her lack of need for greater access. Plaintiff had access in Oracle to

enable her to review her staff's work. Even Michael Pagani, the former Director of the

Financial Operations Department, did not have unlimited access to Oracle. Mr. Pagani's

access to Oracle was primarily limited to making inquiries; significantly, he was not

permitted to utilize Oracle to enter or change data or to make payments. (Thabet Declar., ¶ 27.)

50.    The ability of staff of the Accounting and Fiscal Services Department to engage in Electronic Funds Transfer (EFT) transactions is controlled and strictly limited; two people in the Accounts Payable Division have access to the EFT function, and even then not at the same time. Linda Zhang has had primary access to the EFT function since approximately 2000; Waiman Leong has access to it in Ms. Zhang's absence. At one time, a greater number of staff had access to the EFT function, including myself and plaintiff. Access to the EFT function, which is now done through Oracle, was taken away from all, including myself, except, as noted, Ms. Zhang and Mr. Leong. Even the Controller does not have access to the EFT function. (Thabet Declar., ¶ 27.)

51.    Mr. Thabet did not remove plaintiff's supervisory duties at any point, let alone in December 2004 and summer 2005. In Mr. Thabet's capacity as a Deputy Director, he communicates directly with those Accounts Payable Division staff members whom he needs to perform work assignments without first consulting either that staff member's supervising Assistant Director or other supervisory manager. Plaintiff was not singled out in this regard. Mr. Thabet has communicated directly with both Mr. Leong and Ms. Zhang when he needed to have them perform work assignments for him without first consulting plaintiff, as he did with other lower-level staff regardless of who their supervisors were. (Thabet Declar., ¶ 28.)

## Commencement of Federal Court Action

52.   Plaintiff commenced this federal court employment discrimination action against NYCHA

on or about February 23, 2006. (Federal Court Summons and Complaint are appended to

Defendant's Notice of Motion.)

Dated:   New York, New York
         July 27, 2007

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendant
250 Broadway, 9th Floor
New York, New York  10007
(212) 776-5259

By: _____
    Jeffrey Niederhoffer (JN 1942)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMY CHIN,

               Plaintiff,

    -against-

THE NEW YORK CITY HOUSING AUTHORITY,

               Defendant.

06 CV 1437 (RJH) (GWG)

---

LOCAL RULE 56.1 STATEMENT IN
SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

---

RICARDO ELIAS MORALES
General Counsel
Jeffrey Niederhoffer, Of Counsel
New York City Housing Authority
Attorney for Defendant
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5259